UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,              Case No. 18-cv-10223

v.                                          Paul D. Borman
                                            United States District Judge
PATRICE L. HAROLD,
LESLIE DRURY, as SUCCESSOR                  Mona K. Majzoub
TRUSTEE of the SARA ROSE                    United States Magistrate Judge
REVOCABLE LIVING TRUST u/a/d
May 21, 1997, as may be now or
hereafter amended,
STATE OF MICHIGAN, and
TREASURER OF WAYNE COUNTY,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (ECF #24)

## I.      BACKGROUND

On January 18, 2018, Plaintiff United States of America initiated this action

against Defendant Patricia Harold, Leslie Drury as Successor Trustee of the Sara

Rose Revocable Living Trust u/a/d May 21, 1997, the State of Michigan, and the

Treasurer of Wayne County, seeking to recover $403,801.66 in Harold's unpaid

income tax liabilities. (ECF #1.) On August 29, 2018, Plaintiff filed a one-count

Amended Complaint, requesting enforcement of federal tax liens that it had filed

1

against real property in which Harold has an interest of approximately $425,000 through a land purchase contract. (ECF #16.)

Related to this matter, on January 20, 2016, Harold filed for Chapter 7 bankruptcy, *In re Patrice Harold*, No. 16-40659 (Bankr. E.D. Mich. 2016). On November 15, 2016, Plaintiff United States of America initiated an adversary proceeding in the Bankruptcy Court, alleging nondischargeability of the income tax debts, *inter alia*, in a three-count "Complaint to Determine Dischargeability." *United States of America v. Harold* (*In rem Harold*), No. 16-5041, ECF #1. Plaintiff filed a Motion for Partial Summary Judgment on Counts I ("Nondischargeability of Tax Debt for Tax Years 2012 and 2014 Pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i)") and II ("Nondischargeability of Tax Debt for Tax Years 2008 and 2010 Pursuant to 11 U.S.C. § 523(a)(1)(B)"), noting that if the motion was granted, years 2004-2009 and 2011 would remain for adjudication pursuant to Section 523(a)(1)(C) (Count III, "Nondischargeability of Tax Debt for Tax Years 2004-12 and 2014 Pursuant to 11 U.S.C. §§ 523(a)(1)(C)"). (*Id.* at ECF ##1, 75.) The Parties' arguments in the adversary proceeding motion, a substantial portion of which is devoted to tax years 2008 and 2010 (Count II), is repeated in the briefing on the instant Motion. (*See, e.g.,* Pl.'s Br., ECF #75, Ex. 4.) On August 20, 2018, Plaintiff's

Motion for Partial Summary Judgment was granted by the Bankruptcy Court in the adversary proceeding as to both Counts I and II. (ECF #105.)[1]

On November 21, 2018, Plaintiff filed the instant Motion for Summary Judgment. (ECF #24.)[2] Harold filed her Response on December 28, 2018. (ECF #42.)[3] On March 4, 2019, Plaintiff filed its reply. (ECF #51.) The Court held a hearing on the matter on June 5, 2019.

## II.    FACTS

### A. Property At-Issue

On or around August 19, 2005, Harold entered into a land contract (the "Land Contract") with Robert J. Drury, the attorney-in-fact for Sara Rose, Trustee of the Sara Rose Revocable Living Trust u/a/d May 21, 1997, as may now be or hereafter amended ("Trust") regarding the property commonly known as Part of 9100-9110 Dwight, Detroit (the "Property"). (Pl.'s Mot., Ex. B, ECF #24-1, PgID 228.) The Land Contract, as originally executed, provided for the sale of the Property to Harold

---

[1] Two separate orders were entered in accordance with the opinion, one by stipulation of the parties regarding Count I (ECF #110), and one by the court regarding Count II (ECF #106).

[2] On December 10, 2018, Plaintiff filed an Amended Brief in Support of Motion for Summary Judgment, originally filed on November 21, 2018, to include additional exhibits and correct the dates of certain notices. (ECF #32.)

[3] Harold's Response filed on December 24, 2018 had been stricken for failure to comply with local formatting rules. (ECF #36.)

for $625,000 in installments over the course of eight years. (*Id.*) On or around October 31, 2013, Harold, and Leslie Drury, Successor Trustees of the Trust, agreed to amend the Land Contract, providing for the remaining balance to be paid in installments over approximately nine years as of September 13, 2013. (*Id.* at PgID 233-35.) The principal balance remaining on the Land Contract at that time was $401,410.29. (*Id.* at PgID 234.)

## B. Federal Tax Liens

Patrice Harold has incurred over $400,000 in federal income tax liabilities since 2004. The chart below illustrates the assessments made by a delegate of the Secretary of the Treasury owed to the Internal Revenue Service ("IRS") on the amounts Harold reported on joint federal income tax returns for those tax years. The chart reflects the balance due as of January 5, 2018 and includes any payment or other credits:[4]

| Tax Year | Assessment Date | Assessment Type | Assessed Amount | Balance Due as of 1/5/2018 |
|----------|-----------------|-----------------|-----------------|----------------------------|
| 2004 | 11/27/06<br>11/27/06<br>11/27/06<br>11/27/06<br>11/27/06<br>8/15/11<br>8/11/14 | Federal Income Tax<br>Estimated Tax Penalty<br>Late Filing Penalty<br>Late Payment Penalty<br>Interest<br>Late Payment Penalty<br>Interest | $12,177.00<br>$348.95<br>$2,289.82<br>$857.54<br>$1,216.03<br>$925.95<br>$4,545.26 | $16,909.82 |

---

[4] This explains why the "Balance Due as of 1/5/2018" column total of $403,801.66 is less than the sum of the values in the "Assessed Amount" column, not included in the chart, which equals $466,969.18.

| Tax Year | Assessment Date | Assessment Type | Assessed Amount | Balance Due as of 1/5/2018 |
|---|---|---|---|---|
| 2005 | 1/8/07 | Federal Income Tax | $48,606.00 | $89,762.46 |
| | 12/11/06 | Estimated Tax Penalty | $61.00 | |
| | 1/8/07 | Late Filing Penalty | $10,936.35 | |
| | 1/8/07 | Late Payment Penalty | $2,187.27 | |
| | 1/8/07 | Interest | $3,470.92 | |
| | 8/15/11 | Late Payment Penalty | $9,142.59 | |
| | 8/11/14 | Interest | $23,238.68 | |
| 2006 | 11/26/07 | Federal Income Tax | $22,810.00 | $43,874.67 |
| | 11/26/07 | Estimated Tax Penalty | $1,079.00 | |
| | 11/26/07 | Late Payment Penalty | $910.00 | |
| | 11/27/07 | Interest | $1,149.91 | |
| | 8/15/11 | Late Payment Penalty | $4,777.49 | |
| | 8/11/14 | Interest | $8,257.56 | |
| 2007 | 11/17/08 | Federal Income Tax | $28,548.00 | $64,962.14 |
| | 11/17/08 | Estimated Tax Penalty | $1,154.00 | |
| | 11/17/08 | Late Payment Penalty | $1,131.92 | |
| | 11/17/08 | Interest | $954.67 | |
| | 11/24/08 | Interest | $36.50 | |
| | 5/17/10 | Miscellaneous Penalty | $1,786.00 | |
| | 5/17/10 | Federal Income Tax | $8,932.00 | |
| | 8/15/11 | Late Payment Penalty | $6,966.87 | |
| | 8/13/12 | Late Payment Penalty | $893.20 | |
| | 8/11/14 | Interest | $10,136.34 | |
| 2008 | 4/4/16 | Federal Income Tax | $38,604.00 | $53,462.24 |
| | 4/4/16 | Estimated Tax Penalty | $797.80 | |
| | 4/4/16 | Late Filing Penalty | $7,089.97 | |
| | 4/4/16 | Late Payment Penalty | $6,762.67 | |
| | 4/4/16 | Interest | $8,674.10 | |
| 2009 | 11/15/1 | Federal Income Tax | $41,625.00 | $37,363.12 |
| | 11/15/1 | Estimated Tax Penalty | $498.63 | |
| | 11/15/1 | Late Payment Penalty | $860.19 | |
| | 11/15/1 | Interest | $583.16 | |
| | 8/15/11 | Late Payment Penalty | $1,966.16 | |
| | 8/13/12 | Late Payment Penalty | $2,940.24 | |
| | 8/11/14 | Interest | $3,633.39 | |
| | 8/11/14 | Late Payment Penalty | $364.15 | |
| 2010 | 4/4/16 | Federal Income Tax | $29,559.00 | $51,099.29 |
| | 4/4/16 | Estimated Tax Penalty | $633.92 | |
| | 4/4/16 | Late Filing Penalty | $6,470.77 | |
| | 4/4/16 | Late Payment Penalty | $7,121.72 | |
| | 4/4/16 | Interest | $5,647.19 | |

| Tax Year | Assessment Date | Assessment Type | Assessed Amount | Balance Due as of 1/5/2018 |
|----------|-----------------|-----------------|-----------------|----------------------------|
| 2011 | 11/26/1 | Federal Income Tax | $25,759.00 | $30,188.65 |
| | 11/26/1 | Estimated Tax Penalty | $415.91 | |
| | 11/26/1 | Late Payment Penalty | $870.99 | |
| | 11/26/1 | Interest | $405.31 | |
| | 8/11/14 | Interest | $1,174.06 | |
| | 8/11/14 | Late Payment Penalty | $4,026.37 | |
| 2012 | 12/9/13 | Federal Income Tax | $21,655.00 | $6,833.40 |
| | 12/9/13 | Estimated Tax Penalty | $50.00 | |
| | 12/9/13 | Late Payment Penalty | $217.69 | |
| | 12/9/13 | Interest | $107.42 | |
| | 8/11/14 | Interest | $113.58 | |
| | 8/11/14 | Late Payment Penalty | $391.63 | |
| 2014 | 2/22/16 | Federal Income Tax | $27,424.00 | $9,345.87 |
| | 2/22/16 | Estimated Tax Penalty | $79.00 | |
| | 2/22/16 | Late Payment Penalty | $624.77 | |
| | 2/22/16 | Interest | $295.57 | |
| | | **TOTAL** | | **$403,801.66** |

(Am. Dec. of Christopher Smith, Nov. 27, 2018, ECF #26, ¶6, PgID 386-88.)

On September 25, 2008, the IRS recorded a Notice of Federal Tax Lien ("NFTL") relating to the income tax liabilities for the years 2004, 2005, and 2006 with the Wayne County Register of Deeds.[5] (Dec. of Philip Bednar, Nov. 21, 2018, Ex. C, PgID 241, ECF #24-1.) On February 13, 2009, the IRS recorded an NFTL for the 2007 tax year liabilities. (*Id.* at PgID 242.) The NFTL for tax years 2009 and 2011 was recorded on August 5, 2013, (*id.* at PgID 243), and the NFTL relating to 2012 was recorded on April 3, 2015 (*id.* at PgID 244). The IRS timely refiled the NFTL for tax years 2004, 2005 and 2006. (*Id.* at PgID 245.) Plaintiff stated that there

---

[5] The 2008 NFTL also included assessments for the 2003 tax year. (*Id.*)

is not an NFTL filed with respect to the 2008, 2010 and 2014 tax years, as the assessment liens for those years were made after Harold filed for Chapter 7 bankruptcy. However, Plaintiff has included the assessments for tax years 2008, 2010 and 2014, citing 26 U.S.C. § 6321 (lien arises on assessment and demand), in this lawsuit.

In her Response Brief, Harold states that she is not "challenging the IRS' tax assessments" but rather argues that the IRS misapplied refunds due from tax returns filed in 1993, 1995, 1996, and 1998 – well over 20 years ago – to her spouse's tax liabilities. (Def.'s Resp., ECF #42, PgID 970.) Harold also states that the 1996 and 1998 transaction were "reversed," yet she never received a refund for the 1998 tax year. (*Id.*) Yet, at no point did Harold contact the IRS regarding these alleged missing multi-thousand dollar refunds.

Harold also states that the IRS "misapplied" payments that she directed toward her 2003 tax liability. (*Id.* at 980.) Harold was assessed in June 2005 and July 2008 for income tax liability relating to 2003. (Dec. of Christopher Smith, Feb. 22, 2019, Ex. D., ECF #51, PgID 1080-81.) She points to her unauthenticated QuickBooks ledger and her unauthenticated chart, apparently generated for purposes of this litigation, to demonstrate a "code" that Harold and her spouse used to "detect whether payments for certain periods were properly applied properly as directed or

misapplied without her authorization." Harold does not, however, attach any cancelled checks demonstrating this "system."

## III.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a summary judgment motion where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 323). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

"The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal citations and quotation marks omitted). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for

trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote and internal quotations omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

At the same time, plaintiff must produce enough evidence to allow a reasonable jury to find in his favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis*, 226 F.3d at 511. Plaintiff cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir.

2008). Plaintiff must show probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004)).

All evidence submitted in opposition to a motion for summary judgment must ultimately be capable of being presented in a form that would be admissible at trial:

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid.* It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e).

*CareSource*, 576 F.3d at 558-59 (internal citations omitted).

A court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## IV.   ANALYSIS

Defendant Harold's Response to Plaintiff's Motion for Summary Judgment abandons the majority of her affirmative defenses (with the exception of those

pertaining to the 2008 and 2010 tax returns – issues already aptly explained in an opinion by the Bankruptcy Court – and a single defense, "Mischaracterization and Misapplication of Payments"). Harold admits that she "is not challenging the IRS tax assessments" other than those relating to tax years 2008 and 2010. (Def.'s Resp., ECF #42, PgID 965.) Harold now argues that 20-plus-year-old Form 1040 Head of Household and/or joint refunds were misapplied to her spouse's 1987 tax liabilities and that the IRS did not properly apply payments that Harold directed toward her 2003 tax liability. (*See* Def.'s Mot. to Am. Affirmative Defenses, Dec. 24, 2018, ECF #35, PgID 564.) None of these new and/or previously decided issues defeat Plaintiff's Motion for Summary Judgment.

## A. Allegedly "Mischaracterized" 2003 Tax Year Payments

With respect to her defense that the IRS "mischaracterized" her 2003 tax year payments, Harold again directs the Court to another Do-It-Yourself (DIY) set of exhibits purporting to illustrate Harold's smoking gun "code" that catches the IRS misapplying her payments. The smoking gun is comprised of Harold's declaration explaining the "code," her QuickBooks ledger (part of which was lost in a 2010 computer crash), and a chart of Harold's payments to the IRS as she "intended" versus how the IRS allegedly applied those payments. (Def.'s Resp., Exs. I, S, T, ECF ##36-10, 36-20, 36-21, PgID 787, 902, 928.) All of these exhibits, save possibly the cryptic declaration, are unauthenticated hearsay and inadmissible under Federal

Rules of Evidence 801 and 802. Moreover, Harold does not attach a single canceled check or electronic fund transfer ("EFT) receipt as evidence that payments were made and misdirected as she argues, and she relies solely on inadmissible – and irreconcilable – exhibits.

For example, even if Harold's exhibit purportedly comparing her coded payments to the years the IRS applied the payments (Ex. T), Harold's explanation does not back up her argument that payments were misapplied. Per Harold's code (*i.e.*, the last dollar value indicates the year to which the payment was meant to be applied), the second payment that Harold intended for tax year 2001 in the amount of $707.00 should instead have been allocated by Harold to tax year 1997. (Def.'s Resp. ECF #36-21, PgID 928.) All of the other payments end in zeroes rather than ones, as they should according to Harold's own explanation. Indeed, none of the subsequent dollar amounts end in the year to which the payment was allegedly aimed – none of the payments "directed" by Harold to 2003 were "coded" for 2003. (Def.'s Resp. ECF #36-21, PgID 929.) For many reasons, the Court cannot rely upon this imprecisely and inaccurately applied "code."

**B. Allegedly Misapplied Refunds**

Harold makes similar arguments regarding her 1993, 1995, 1996 and 1998 tax returns. She claims that she was owed a refund for those tax years but did not receive such refunds because they were instead allocated to her husband's outstanding tax

liabilities for tax year 1987. Harold claims that the application to her spouse's account in 1998 was reversed and the transcript reflects that a refund was issued, but Harold states that she never received a refund. The 1996 credit was reversed as well, and Harold states she *did* receive a refund for that year.

Harold went through the tax transcripts for 1993, 1995, 1996, and 1998 in an attempt to point out the 1040 tax refunds to which she was allegedly entitled that were instead applied to her husband's income tax liability for tax year 1987. (Def.'s Resp., ECF #42, PgID 971-77.) Relying on unauthenticated exhibits constituted solely of hearsay in violation of Federal Rules of Evidence 801 and 802, Harold claims that, "Using the average investment rate of return (S+P 500) for these misapplied and/or misappropriated tax refunds the current balance owing from the IRS to Dr. Patrice Harold would be $377,266.00." (Def.'s Resp., ECF #42, PgID 971, citing Ex. E, December 18, 2018 Email from Jeff Bigelman re: "Interest Calculations," info@irscalculators.com, and Ex. J, "Average S&P 500 Index Return From January 1, 2004 through 12-24-18 Compounded Annually Rate = 11.03%," PgID 792.) Yet, Harold has never contacted the IRS regarding any missing refunds, nor did she disclose any assets regarding the refunds in her Chapter 7 petition (either as tax refunds owed, potential claims against a third-party, or set-off rights). (*In re Harold, supra*, ECF #1, Chapter 7 Voluntary Petition.)

## 1. The Tucker Act and Little Tucker Act

Oddly, despite not receiving an alleged $44,791.16 in refunds between 1993 and 1998, Harold never contacted the IRS or filed a claim, and it is too late for her to pursue recovery or argue an affirmative defense on this basis now. As Plaintiff points out in its Reply, even if Harold were correct regarding her claims as to tax years 1993, 1995, 1998 and 2003, her remedy would have been to bring an action under the Tucker Act, 28 U.S.C. §1491(a)(1), or the Little Tucker Act, 28 U.S.C. §1346(a)(2), depending on the refund amount for that tax year of the allegedly "misapplied" to her spouse's 1987 income tax liability (under the Tucker Act for an amount over $10,000, and/or under the Little Tucker Act for an amount below $10,000).[6] In *Bonwit Teller* at 265, the Supreme Court explained that when an overpayment is allowed and illegally applied to the liability of a different taxpayer, the suit is not a tax refund suit governed by the statute of limitations period applicable thereto, but rather is a suit grounded on "account stated," with the cause of action arising upon notification of the misapplication of the refund. Because the

---

[6] Plaintiff cites *Bonwit Teller & Co. v. United States*, 283 U.S. 258, 265 (1931) for the position that when an overpayment is used to offset the liability of a taxpayer whose income is not included on the return reporting the overpayment, the claim – which is necessarily a claim for a refund under 26 U.S.C. §6511(a) – has been *granted. Bonwit Teller* at 265 ("This case is not within the clause giving two years after disallowance [of a refund claim] because here *the claim was allowed*.") (emphasis added).

cause of action is founded on a statement of account reflecting an illegal offset of the refund, a lawsuit asserting that cause of action must be brought "within six years after the right of action accrues." *Id.*; 28 U.S.C. §2401(a). Whether Harold's cause of action accrued when she filed her returns claiming a refund, *or upon receiving notice of application of the refund as an offset* (which the IRS would no longer have records of), her claims would have expired many years ago. (Pl.'s Reply, ECF #51, PgID 1057-58.) *See Daube v. U.S.*, 289 U.S. 367, 370 (1933) ("A different situation was disclosed in the *Bonwit Teller* [c]ase, *supra*. There the certificate of overassessment had been delivered to the taxpayer. 'Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought.'")

## 2. The Doctrine of Laches and the Misapplied Refunds

The doctrine of laches also applies to Harold's refund argument. She argues that the IRS owes her $377,266.00 as a result of the misapplied refunds allegedly resulting from transactions relating to tax years 1993, 1995, and 1998. These transactions and tax years are wholly unrelated to those at issue in the instant matter. The Court therefore finds that Harold argues that the $377,266.00 allegedly owed to her by the IRS from unrelated transactions is a set-off to the $403,801.66 in assessments owed by Harold from tax years 2004-2012 and 2014. "Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Operating Engineers Local 324 Health Care Plan*

*v. G & W Const. Co.*, 783 F.3d 1045, 1053 (6th Cir. 2015). The Bankruptcy Court for the District of Delaware provided an extensive overview of the application of laches to set-off in *NVF Co. v. New Castle Cty.*, 276 B.R. 340, 351–54 (D. Del. 2002), *aff'd*, 61 F. App'x 778 (3d Cir. 2003):

> NVF argues that because its claim for recovery of its repair costs is asserted as a defense and setoff to the County's Proof of Claim, it cannot be barred by the doctrine of laches.
>
> The County argues in response that NVF's claim to the off-site force main repair costs is not defensive in nature, and therefore the doctrine of laches can apply. The County's Proof of Claim seeks unpaid sewer fees from *1991 to 1993*. The County asserts that because NVF's seeks reimbursement for repair costs from *1971 to 1987*, its claim is not defensive in nature, but rather is an independent cause of action for relief. According to the County, because NVF's claim for repair costs is *unrelated* to the County's claim for sewer fees, the doctrine of laches can apply.
> …
>
> *A setoff claim…is unrelated to the opponent's claim, and thus it lacks the same defensive nature.* This difference between recoupment and setoff explains why *the Supreme Court permitted an untimely defensive recoupment claim arising from the same transaction* in Bull [v. United States, 295 U.S. 247, 262 (1935)], but limited that holding to situations in which the defensive claim is related to the same transaction in *Rothensies. See* [*Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299 (1946)].… The County argues that because NVF's setoff claim is unrelated to the underlying sewer bill, the fact that NVF's only requested relief is a setoff does not avoid the application of the doctrine of laches.
> …
>
> The only relation between the County's claim for unpaid sewer fees and NVF's claim for its off-site force main repair costs is that both are generally related to NVF's use of sewers. *The events surrounding the two claims are separated by four years.* Moreover, NVF's claim against

the County arises from the 1970 Agreement, whereas the County's claim against NVF arises from the regular imposition of tariffs for sewer discharge. Thus, the court concludes that NVF's setoff claim is in the nature of a setoff…. Further, the court believes the doctrine of laches can apply in setoff because NVF's setoff claim is *factually unrelated* to its liability to the County for sewer fees.

*NVF* at 276 B.R. 351–54 (emphasis added).

For the reasons explained above (i.e., it arises from unrelated transactions), Harold's affirmative defense is one of set-off, to which laches applies. Harold waited over 20 years to assert any type of claim for $44,000 in missing refunds and did nothing to bring this alleged omission to the attention of the IRS. Nor did Harold include her claimed right to $377,266.00 from the IRS resulting from those missing refunds in her Chapter 7 petition. Harold has unreasonably delayed asserting any rights she may have in connection to this defense, and this delay has clearly prejudiced Plaintiff's ability to contest her argument by raising issues going as far back 1987. Therefore, the Court finds that laches operates to bar Defendant Harold's last remaining affirmative defense.

## C. Plaintiff's Documentary Evidence

Although Harold also states that the Plaintiff has no documents to support its claims, Plaintiff cites numerous IRS tax transcripts, also cited by Harold as evidence of Plaintiff's conduct. (Smith Dec., Nov. 27, 2018, ECF #26, Ex. B, PgID 77.) Plaintiff also cites Forms 4340 (Certificate of Assessments, Payments, and Other Specified Matters) for each tax year at issue, which set forth, among other things,

"Statutory Notice[s] of Balance Due," which is the standardized IRS demand for payment, sent to Harold's last known address for the given tax year. (Smith Dec. at Ex. A.) Forms 4340 are entitled to a presumption of correctness. *United States v. Walton,* 909 F.2d 915, 919 (6th Cir. 1990). Harold's argument that Plaintiff is not entitled to summary judgment because it only produced six checks dated after 2011 evidencing payment from Harold is without merit. (Def.'s Resp., ECF #42, PgID 981.) As the Bankruptcy Court observed when Harold made an argument regarding adverse inference, "the IRS has only a three year retention policy," and Harold did not cite any provision "requir[ing] the IRS to preserve paper records" once the three year period passed. *United States v. Harold* (*In re Patrice Harold*), No. 16-5041, ECF #105, pp. 14-15 (Bankr. E.D. Mich., Aug. 21, 2018).

## D. Collateral Estoppel and Non-Dischargeability of Liability for Tax Years 2008 and 2010

In the adversary proceeding filed by Plaintiff United States during Harold's Chapter 7 case, the Bankruptcy Court found, as detailed in an extensive opinion, that Harold's 2008 and 2010 1040 tax returns had not been filed until January 15, 2016, as noted on the Forms 4340, a few days before Harold filed her Chapter 7 petition. *Id.* at 24-25. Regarding the 2008 return, Harold had no evidence that the return was filed by mail or by another permissible method. *Id.* at 24. Thus, there was no genuine issue of material fact as to whether the 2008 return was timely filed. Likewise, Harold alleged that the 2010 return was filed by U.S. mail, but she had no evidence

to support that contention, so the court similarly granted summary judgment to Plaintiff, finding that the 2010 return was also filed on January 15, 2016. *Id.* at 25.

Harold now argues that because these findings resulted from Plaintiff's Motion for Partial Summary Judgment in an adversary proceeding where there is no final judgment, neither *res judicata* (claim preclusion) nor collateral estoppel (issue preclusion) may apply. *See* Fed. R. Bankr. P. 54(b); Fed. R. Civ. P. 54(b). However, the ruling of the Bankruptcy Court is sufficiently complete to collaterally estop Harold from pursuing the same issue in this matter. The court in *Merial, Inc. v. Sergeant's Pet Care Prods., Inc.*, 2018 WL 5603536, at *7-8 (W.D. Mich. Oct. 30, 2018) observed:

> The Sixth Circuit has not extensively considered the issue, although it has observed that "a judgment is not required so long as there has been a final decision with respect to the issue to be given preclusive effect." *Am. Postal Workers Union Columbus Area Local AFL-CIO v. United States Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984). *Thus, it appears that the Sixth Circuit tends to follow the more liberal view of preclusion*.

(emphasis added).

*Merial* cited *Abbott Laboratories v. Thermo Chem., Inc.*, 790 F. Supp. 135 (W.D. Mich. 1991), which explained the basis of this approach:

> Section 13 of the Restatement (Second) of Judgments provides:
>
> For purposes of issue preclusion..., "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

The official comments to Section 13 explain that the criteria for determining finality for purposes issue preclusion are not as strict as they are for claim preclusion. Even though there is no final judgment in the strict sense, the court may regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment:

Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

Restatement (Second) of Judgments § 13 comment g (1980)....

Finality for collateral estoppel is not the same as that required to appeal under 28 U.S.C. § 1291. *Gilldorn Savings Association v. Commerce Savings Association*, 804 F.2d 390, 393 (7th Cir. 1986)....As noted by Judge Friendly in *Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 955 (2d Cir. [1964]), *cert. denied*, 377 U.S. 934, 84 S. Ct. 1339, 12 L.Ed.2d 298 (1964), *"finality" in the context of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."*

*Abbott Laboratories* at 139–40 (emphasis added). *See also John Morrell & Co. v.*

*Local Union 304A of the United Food & Commercial Workers, AFL-CIO*, 913 F.2d

544, 563 (8th Cir. 1990) (stating that "we believe that finality for purpose (sic) of

appeal under section 1291 is not necessarily the finality that is required for issue

preclusion purposes"); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) (same).

With regard to a partial summary judgment order, courts have found that issue preclusion is proper where: (i) the party to be estopped in the present action was represented by counsel in the prior action; (ii) the issues were genuinely contested; (iii) the court's partial summary judgment order was not tentative; and (iv) allowing relitigation of the issue would be a waste judicial resources. *Merial* at *7 (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 360 (3d Cir. 1999) ("Our decisions hold that decisions not final for purposes of appealability may nevertheless be sufficiently final to have issue preclusive effect.")).

All of these elements are present with respect to the Bankruptcy Court Opinion and Order finding that the 2008 and 2010 are not dischargeable. Harold was represented by counsel in the bankruptcy case, including during the adversary proceeding filed by Plaintiff. The issues regarding dischargeability were fully briefed, and both parties' filings were supported by "lengthy transcripts of depositions, documents and declarations." *United States v. Harold* (*In re Patrice Harold*), No. 16-5041, ECF #105, p. 2 (Bankr. E.D. Mich., Aug. 21, 2018). The court had a hearing on the Plaintiff's motion and took it under advisement before issuing its 26-page opinion. The order on Count II, specifically as to the 2008 and 2010 tax returns, was not tentative. Clearly, substantial resources were expended by

the court and by the Parties in order to reach a conclusion on this issue. The Court finds that it would be an obvious waste to dedicate further resources to rehashing the matters of non-dischargeability of the 2008 and 2010 tax liability, which were filed in January 2016, as well as the Bankruptcy Court's determination that there shall be no adverse inference instruction based on the IRS's compliance with its three-year document retention policy.

## V. CONCLUSION

For the reasons above, the Court GRANTS Plaintiff United States' Motion for Summary Judgment.

SO ORDERED.


Dated:  June 21, 2019                    s/Paul D. Borman_____
                                         Paul D. Borman
                                         United States District Judge