UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

PATRICE L. HAROLD,
LESLIE DRURY, as SUCCESSOR
TRUSTEE of the SARA ROSE
REVOCABLE LIVING TRUST u/a/d
May 21, 1997, as may be now or
hereafter amended,
STATE OF MICHIGAN,
TREASURER OF WAYNE COUNTY,
and SWEWAT, LTD.

                    Defendants.

_____/

Case No. 18-cv-10223

Paul D. Borman
United States District Judge

Mona K. Majzoub
United States Magistrate Judge

## ORDER (1) GRANTING PLAINTIFF'S MOTION FOR ORDER DETERMINING THAT DEFENDANT SWEWAT, LTD HAS SUCCEEDED TO THE POSITION OF DEFENDANT HAROLD AND IS BOUND BY ALL PRIOR RULINGS IN THIS CASE, AND (2) DENYING DEFENDANT'S EMERGENCY MOTION TO VACATE ORDER

## I.    INTRODUCTION

The relative rights and obligations of the parties involved in this action by Plaintiff United States of America (United States) to enforce federal tax liens against Defendant Dr. Patrice Harold have been the subject of some confusion since Dr. Harold informed the Court that she sold her land contract interest in a

property on Dwight Street, in Detroit, to Defendant SWEWAT, LTD (SWEWAT). The motions at issue seek to clear up that confusion.

On the one hand, the United States asks the Court to affirm that, as a party joined under Federal Rule of Civil Procedure 25(c), SWEWAT is bound by all the prior rulings in this matter, including the grant of summary judgment in favor of the United States. (ECF No. 96, Motion to Substitute, PgID 2032.) On the other hand, the Defendants ask the Court to conclude that SWEWAT should not have been joined under Rule 25(c) and to vacate its joinder. (*See* ECF No. 101, Dr. Harold's Objection, PgID 2073–75.) The Defendants are also asking to be relieved from the Court's August 16, 2019 Order Appointing Receiver. (*See* ECF No. 91, Emergency Joint Motion, PgID 1842.) For the reasons outlined below, the Court grants Plaintiff's motion and denies the Defendants' motion.

## II.    BACKGROUND

On January 18, 2018, Plaintiff United States initiated this against Defendant Dr. Harold seeking to enforce several federal tax liens against Dr. Harold's interest in a property located at 9110 Dwight Street, Detroit, Michigan (the Property). (ECF No. 1, Complaint.) Dr. Harold owned an interest in the Property pursuant to a land contract with the Sara Rose Revocable Living Trust. (*See* ECF No. 70-4, Harold Dec., PgID 1370.)

2

On November 21, 2018, the United States filed a motion for summary judgment, which it later amended on December 10, 2018. (ECF No. 24, Motion for Summary Judgment; ECF No. 32 Amended Motion for Summary Judgment.) Resolution of that motion was delayed for several months for various reasons, and the Court ordered the parties to attend a settlement conference in front of Magistrate Judge Majzoub on March 19, 2019. (ECF No. 46, Notice to Appear.) The parties attended the conference but did not reach a settlement, so a hearing on the United States' Motion for Summary Judgment was set for May 29, 2019. (ECF No. 53, Notice of Hearing.) After the hearing, which had been rescheduled to June 5, 2019, the Court granted the Motion for Summary Judgment and entered a judgment in favor of the United States on June 21, 2019. (ECF No. 61, Judgment.)

Shortly thereafter, on July 3, 2019, the United States filed a Motion to Appoint Receiver in order to enforce the judgment by having the receiver take custody of the Property and arrange for its sale. (ECF No. 62, Motion to Appoint Receiver.) Two weeks later, on July 17, 2019, Defendant Harold filed a response to Plaintiff's Motion arguing that the motion was moot because she had already sold the subject property. (*See* ECF No. 63, Dr. Harold's Objection to Motion to Appoint Receiver, PgID 1205–13.) She said that "[o]n March 3, 2019, Dr. Harold transferred her land contract interest by sale to SWEWAT, LLC via a Quit Claim

Deed." (*Id.* at PgID 1210.) The attached Quit Claim Deed indicated that it was executed on May 13, 2019 and recorded on June 27, 2019, (*Id.* at PgID 1216), but Dr. Harold signed the "Agreement to Purchase Interest in Land Contract" on March 3, 2019. (ECF No. 70-1, Harold Dec., PgID 1356–59.)

To summarize, on July 17, 2019, Dr. Harold informed the Court and the United States, for the first time, that on March 3, sixteen days before she attended the settlement conference, she agreed to sell the Property upon which the United States was trying to enforce its liens, and that on May 13, less than a month before she attended the hearing on the United States' Motion for Summary Judgment, she finalized that sale by executing a Quit Claim Deed, which she had recorded six days after the Court entered a judgment allowing the United States to enforce its liens against that property.

Upon learning that Dr. Harold had already transferred her interest in the Property to SWEWAT, on July 24, 2019, the United States filed an emergency motion to join SWEWAT as a defendant in the case and to require disclosure of information regarding the sale of the Property. (ECF No. 68, Emergency Motion for Order.) The following day, the Court granted that motion, joined SWEWAT as a defendant, ordered it to show cause why it should not be bound by all prior

4

orders and proceedings in this case and why a receiver should not be appointed, and set a hearing for August 1, 2019. (ECF No. 69, Order for SWEWAT.)

At the August 1 hearing, the Court heard arguments from the United States in support of its Motion to Appoint a Receiver as well as arguments from Dr. Harold and SWEWAT in support the Emergency Motion to Vacate the July 25, 2019 Order (ECF No. 77) that Dr. Harold had filed on the previous day. During the hearing, the Court denied Dr. Harold's Motion, granted the United States' Motion, directed the United States to submit a proposed order appointing a receiver and directed the parties to submit nominations for the receiver. (*See* ECF No. 83, Transcript of Motion Hearing held on August 1, 2019, PgID 1826–27.) On August 16, 2019 the Court entered an order appointing Austin Black II, the person proposed by the United States (Defendants had not yet proposed anyone), to the position of receiver. The parties then filed the motions addressed in this Order.

## III.    STANDARD OF REVIEW

The primary question the Court must answer is whether SWEWAT was properly joined as a defendant under Rule 25(c). Rule 25(c) does not identify a method or standard for District Courts to use in determining that a third party is a successor in interest who may be joined or substituted. *See Luxliner P.L. Export,*

*Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3rd Cir. 1993) (comparing Rule 25(c) with Rule 56 which does specify a standard).

Facing the question of how a District Court should determine a contested motion under Rule 25(c), the Third Circuit first noted that there can be some due process concerns with holding a party that has not had the opportunity to participate in litigation bound by the litigation's outcome, and then held that the following procedure addressed those due process concerns:

> "in a context such as this in which a decision on a Rule 25(c) motion effectively imposes liability, the court must first determine whether the [evidence before the court] "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [joinder or substitution] as a matter of law." Cf. Fed.R.Civ.P. 56(c). If [it] do[es], the court should grant the motion; if [it] do[es] not, however, the court should conduct an evidentiary hearing to decide whether the motion should be granted.

*Id.* at 72–73. It does not appear that the Sixth Circuit has addressed this question, so because the Third Circuit's reasoning is persuasive, the Court follows this standard of review in deciding this Rule 25 Motion.

## IV.     ANALYSIS

### A. Plaintiff's Motion to Substitute

#### 1. Federal Rule of Civil Procedure 25(c)

In seeking "an order determining that Defendant SWEWAT, LLC ("SWEWAT"), as a newly-added Defendant to this case pursuant to Federal Rule

6

of Civil Procedure 25(c)…has succeeded to the position of Defendant Patrice Harold in respect to the real property that is the subject of this action, and is bound by all prior rulings in this case," the United States is seeking only a clarification. (ECF No. 96, Motion to Substitute, PgID 2032.) The application of Rule 25(c), which says "if an interest is transferred, the action may be continued by or against the original party, unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party," does not change the substantive rights and obligations of the parties or of the transferee. Fed. R. Civ. P. 25(c). It "merely describes the method by which the original action may proceed if the right of action survives." 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1952, at 655 (3d ed. Supp. 2019). The question, then, that the United States presents in its motion is whether its original right of action to enforce federal tax liens against the property of Dr. Harold survived the transfer of the Property to SWEWAT.

The answer that question depends on the accuracy of the alternative finding urged by the United States, that "SWEWAT purchased Defendant Harold's interest in the property subject to the federal liens against Defendant Harold." (ECF No. 96, Motion to Substitute, PgID 2033.) *See generally Luxliner*, 3 F.3d at 71–73 (analyzing applicable corporate law to determine whether a nonparty was a

successor in interest such that it could be joined under Rule 25(c)). If SWEWAT purchased the property interest at issue free and clear of the Internal Revenue Service (IRS) liens, as it argues, the right of action to enforce those liens would not have survived the transfer and joining SWEWAT under Rule 25(c) would have been in error. If SWEWAT purchased the property interest subject to the federal liens against Dr. Harold, as the United States urges, the right of action would have survived the transfer and SWEWAT would be bound by all prior rulings in this case by virtue of having purchased the interest, regardless of whether or not it was joined under Rule 25(c). *See Television Reception Corp. v. Dunbar*, 426 F.2d 174, 178 (6th Cir. 1970) ("[R]egardless of whether the transferee was made a party to the action, its rights in relation to the [interest transferred] depended on the outcome of the litigation between [the plaintiff] and the transferor.")

## 2. The IRS Liens Followed the Vendee Interest

A straightforward application of long-accepted lien principles makes clear that SWEWAT took Dr. Harold's vendee interest in the Property subject to the federal tax liens. The threshold question in any case involving a federal tax lien is "whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." *Aquilino v. United States*, 363 U.S. 509, 512

8

(1960). State law determines whether there is a property interest to which a federal tax lien could attach. *Id.*

Dr. Harold owned a land contract, or vendee, interest in the Property. (*See* ECF No. 70-4, Harold Dec., PgID 1370.) Under the laws of Michigan, "a vendee in a land contract is vested with the equitable title in the land," while the vendor retains the legal title "as security for the payment of the purchase price of the land." *Barker v. Klingler*, 302 Mich. 282, 288 (1942). The Sixth Circuit has analogized the nature of the vendee's equitable title to "the vendor holding the legal title in trust for the vendee pending full payment, and the vendee becoming in equity the owner of the real property to the extent of payments made." *Vereyken v. Annie's Place, Inc.*, 964 F.2d 593, 594 (6th Cir. 1992). The vendee's equitable title, under Michigan law, is a property interest to which an IRS lien can attach. *See id.* (holding that a federal tax lien can attach to the land contract vendee's equitable title). Therefore, the IRS liens here attached to Dr. Harold's equitable title in the Property.

Once a tax lien attaches, federal law governs its consequences for the property, other lienholders, and subsequent purchasers. *See Aquilino*, 363 U.S. at 513–14 (emphasizing that federal law determines the priority of competing liens). The transfer of property after a lien has attached does not affect the lien. *United*

*States v. Bess*, 357 U.S. 51, 57 (1958) ("for 'it is of the very nature and essence of lien, that no matter into whose hands the property goes, it passes *cum onere* [with the burden].' ") (quoting *Burton v. Smith*, 13 Pet. 464, 483 (1839)). The limited exceptions to this rule in the Internal Revenue Code (IRC) exist to offer protection to current or future interest-holders who acquired their interest without notice of the tax liens. Thus, § 6323(a) of the IRC states, "the lien imposed by section 6321 shall not be valid as against any purchaser...*until notice thereof* which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a) (emphasis added). Further stressing the importance of notice, § 6323(h)(6) defines "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers *without actual notice*." 26 U.S.C. § 6323(h)(6) (emphasis added). So, the tax lien attached to Dr. Harold's interest in the Property could not have been affected by any subsequent transfer of the interest unless no notice of the lien had been filed *and* the transferee did not have actual notice of the lien.

SWEWAT took Dr. Harold's interest in the Property subject to the liens because the IRS had filed notice of its liens long before the transfer, and because SWEWAT had actual notice of the liens in the purchase and sale agreement. First,

the IRS filed several Notices of Federal Tax Liens (NFTLs) in the Wayne County Register of Deeds under the names Patrice Harold and Thomas Barrow (Defendant Harold's husband) starting in September of 2008. (*See* ECF No. 24-1, Bednar Dec. Exhibit C, PgID 241–52.) That alone was probably sufficient notice under § 6323(f) which requires notices of liens against real property to be filed in the designated office within the state where the property subject to the lien is located. 26 U.S.C. § 6323(f)(1)(A)(i). The IRS went a step further, to ensure that any potential purchaser of the Property would discover the liens through a routine title search, and on March 10, 2017 recorded a NFTL in the name of "Sara Rose, for the purpose of encumbering the unrecorded interest of Patrice Harold under a Land Contract for Certain Property." (ECF No. 68-1, Emergency Motion for Order Exhibit A, PgID 1273–74.) Finally, the addendum to the purchase and sale agreement between Dr. Harold and SWEWAT, executed on March 3, 2019, states that though "the Property itself has no claims or encumbrances" the "seller/assignor's interest in the Land Contract…could be subject to a claim by the IRS." (ECF No. 70-1, Harold Aff. Exhibit 1, PgID 1359.) Clearly, SWEWAT had both record notice and actual notice of the liens against Dr. Harold's interest and therefore took the interest subject to those liens.

### 3. Defendants' Arguments on the Merits

Although the Defendants agree that Dr. Harold's vendee interest in the Property is an interest to which federal tax liens could and did attach, they argue that, upon the sale of the interest to SWEWAT, the lien "immediately detached from the property and reattached to the cash proceeds." (ECF No. 97, SWEWAT's Reply on Emergency Motion, PgID 2057, *see also* ECF No. 91, Emergency Joint Motion, PgID 1853–56; ECF No. 101, Dr. Harold's Objection, PgID 2072.) This argument, that when an asset to which a tax lien is attached is sold for cash the lien moves from the asset to the cash, is based on isolated language in *Phelps v. United States* and is without merit. 421 U.S. 330 (1975).

*Phelps* controls only the situation where the asset to which the tax lien had attached is sold before the IRS gives notice by filing an NFTL. In *Phelps*, the IRS made a tax assessment and then a formal demand against a corporation, Chicagoland, after which Chicagoland still did not pay the assessed taxes. 421 U.S. at 331. At that point, a federal tax lien attached to all of Chicagoland's property. *Id.* at 334. After the lien attached to the property but before the IRS filed an NFTL, Chicagoland transferred all its assets to an assignee for the benefit of its creditors. *Id.* at 331. The "assignee took Chicagoland's property subject to th[e] lien" because "the unfiled tax lien was valid against all persons except purchasers,

holders of security interests, [etc.]…[and] the assignee did not fall within any of these categories." *Id.* at 334 n. 3. Then, prior to the IRS filing an NFTL, the assignee sold all the assets to convert them into cash. *Id.* at 331. The transferees in this sale were good faith purchasers without notice because no NFTL had been filed, so the lien could not follow the assets. *See id.* at 334 n. 4 ("As indicated in n. 3, supra, an unfiled tax lien is invalid against purchasers.") Because the lien could not follow the assets, it attached to the proceeds of the sale. *Id.* at 334. *Phelps* illustrates an exception to the general rule that liens follow the property, and it is inapplicable here, where the transferee had actual and record notice of the liens.

In making their argument under *Phelps*, Defendants attempt to distinguish a binding Sixth Circuit case, *United States v. Bank of Celina*, 721 F. 2d 163 (6th Cir. 1983). (*See* ECF No. 101, Dr. Harold's Objection, PgID 2072.) *Bank of Celina* unequivocally holds that after a tax lien has attached to property, that property remains subject to the lien when it is transferred. 721 F. 2d at 169. Defendants argue *Bank of Celina* it is "clearly distinguishable" because it involves a bank setting off a taxpayer's debt to the bank with funds the taxpayer had deposited in the account rather than a sale of property for cash. (ECF No. 101, Dr. Harold's Objection, PgID 2072.) They say that in a sale of property for cash, *Phelps* controls. (*Id.*)

Defendants misunderstand the operative factual difference between *Bank of Celina*, where the lien stayed on the property, and *Phelps*, where the lien transferred to the proceeds. In *Bank of Celina*, the IRS filed three NFTLs indicating that tax liens had attached to all the assets of RBS, a corporation in Tennessee. *Bank of Celina*, 721 F. 2d at 165. After the first NFTL had been filed, Bank of Celina entered into a loan agreement with RBS wherein the bank would lend RBS money and RBS would grant the bank a security interest in one of its accounts receivable. *Id.* Later, after the third NFTL had been filed, the bank, exercising its rights under Tennessee law, used some of the money in RBS's bank accounts to set off some of RBS's due and payable loans to the bank. *Id.* The money in RBS's bank accounts was already encumbered by the federal tax liens, and the Bank had record notice of those liens. *Id.* at 167. Bank of Celina's action extinguished RBS's property rights in the money used to set off the loans, which the bank argued meant that "there no longer was property belonging to the taxpayer to which the lien could remain attached." *Id.* at 168. The Sixth Circuit, however, disagreed. *Id.* Applying the same principles of lien priority outlined above, it held that "once a federal tax lien has attached to a taxpayer's property, that property remains subject to the lien when transferred from the taxpayer to a third party." *Id.* at 169 (citing *Bess*, 357 U.S. at 57). The operative difference

between *Bank of Celina* and *Phelps* is notice, not the means of transfer—the transferee had notice of the liens in *Bank of Celina* and therefore took the property subject to those liens, and the transferees in *Phelps* had no notice of the liens and therefore took the property free and clear of those liens.

Here, Defendants bring the same argument that the Sixth Circuit rejected in *Bank of Celina*, saying that "the tax lien only attaches to Dr. Harold's equity interest in the land contract until it was extinguished, as it was here." (ECF No. 101, Dr. Harold's Objection, PgID 2072.) Unfortunately for Defendants, *Bank of Celina* is binding. The federal tax liens against Dr. Harold attached to her vendee interest in the Property, the IRS filed an NFTL which rendered the liens valid as against subsequent purchasers, and the vendee interest in the Property remained subject to those liens after its transfer from Dr. Harold to SWEWAT. Because SWEWAT took the Property subject to the liens, SWEWAT is the successor in interest of Dr. Harold and is bound by all prior rulings in this case, specifically the Court's June 21, 2019 grant of Summary Judgment in favor of the United States in this lien enforcement action.

### 4. Defendant SWEWAT's Rule 25(c) Procedural Objection

In Defendant SWEWAT's Response, SWEWAT argues that its joinder should be vacated because the procedural requirements of Federal Rule of Civil

Procedure 25(c) were not met when it was initially joined as a defendant on July 25, 2019. (*See* ECF No. 106, Defendant SWEWAT's Corrected Response, at 2476–79.) SWEWAT is correct that the procedure by which it was joined was imperfect, but the Court is not required to vacate the joinder of SWEWAT. Even if the Court were to vacate the joinder of SWEWAT, SWEWAT would still be bound by the outcome of this case as the successor in interest to Dr. Harold. *See Dunbar*, 426 F.2d at 178.

Rule 25(c) requires the motion to join the transferee in interest to be "served as provided in Rule 25(a)(3). Fed. R. Civ. Proc. 25(c). Rule 25(a)(3), for its part, says that "[a] motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. Proc. 25(a)(3). Rule 4(h) requires that a corporation, partnership, or association be served in the manner prescribed for an individual by Rule 4(e)(1) or by delivering the papers to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. Proc. 4(h). Finally, Rule 4(e)(1) incorporates state law for serving process, and Michigan Court Rule 2.105 allows service on corporations and partnerships by serving the papers on an officer, resident agent, or general partner. Fed. R. Civ. Proc. 4(e)(1); Mich. Ct. R. 2.105(D-E).

SWEWAT is likely correct to point out that the procedural requirements of Rule 25(c) were not met when it was initially joined as a party.[1] A review of the docket establishes the following sequence of events: Plaintiffs filed an Emergency Motion for an Order Joining SWEWAT on July 24, 2019. (ECF No. 68.) The following day, the Court granted the Motion, joined SWEWAT as a Defendant in this case and ordered SWEWAT to appear before the Court on August 1, 2019 to show cause why it should not be held bound by all prior orders and proceedings in this case and to show cause why a receiver should not be appointed. (ECF No. 69, Order, PgID 69.) The Court granted Plaintiff's motion before receiving briefing from the Defendants in order to preserve the assets in the face of shifting interests—the Property had already been sold once without notice to the Court, and the Court did not want that to happen again. The July 25, 2019 Order further required Defendant Harold to send copies of the Order to SWEWAT, and it required the United States to serve copies of the Order, its motion, and the supporting brief on SWEWAT. (*Id.*)

---

[1] However, SWEWAT does not clearly identify the procedural deficiencies, saying: "Rule 4 prescribes a detailed due process procedure which includes manner of service and the time for a nonparty to respond to a joinder motion. None of these procedures were followed." (ECF No. 106, SWEWAT's Corrected Response, PgID 2477.) Because Rule 4 does not set out any relevant time limits to joinder under Rule 25, this analysis is limited to service of process, which was belated.

17

On July 29, 2019, a process server served copies of Plaintiff's Motion and the July 25 Order joining SWEWAT on Ruth Watkins, the mother of SWEWAT's registered agent Sil Watkins, who stated that "she could accept documents for [Sil] and the company SWEWAT." (*See* ECF. No. 74, Certificate of Service, PgID 1567.) According to SWEWAT's response, July 29 was also the day that Defendant Harold notified SWEWAT that it had been joined and was required to appear at the hearing set for August 1. (ECF No. 106, SWEWAT's Corrected Response, PgID 2477.) This sequence of events establishes that SWEWAT had not been served according to the requirements of Rule 25(c) by the time the Court joined it as a defendant, though it was served shortly thereafter.

Based on this procedural error, SWEWAT asks the Court to vacate its joinder so that the requirements of Rule 25(c) can be followed. (*Id.* at 2479.) In essence, SWEWAT is asking the court to vacate its joinder so that it can be served again, given the opportunity to respond, and then have the Court re-join it.[2] SWEWAT does not cite to any provision of law that establishes that vacating the

---

[2] It would not be entitled to a hearing. If the evidence before the court shows that there is no genuine issue as to any material fact relating to the joinder and the moving party is entitled to joinder as a matter of law, which here, it does, the court can grant the motion under 25(c) without an evidentiary hearing. *See, Luxliner* 13 F.3d at 72–73.

joinder of SWEWAT would be the correct remedy at this point in the litigation, and to do so would be unnecessary and duplicative.

Courts facing similar situations have found additional corrective process unnecessary where the substituted party had some notice of the ongoing proceeding. In *United States v. Canaday*, the court was concerned that a party had been prematurely joined under Rule 25 because it had joined the party a mere four days after receiving the motion to substitute and had not held a hearing or ensured that there had been proper service. No. 1:14-27450, 2017 WL 4772748, at *1 (S.D. W. Va. 2017). The plaintiff there, the United States, then filed another motion to substitute, which indicated that it had properly notified the nonparty to be substituted. *Id.* The court then declined to vacate the Opinion and Order joining the nonparty because the nonparty had, by that time, received proper notice. *Id.* Likewise, in *Hirsch v. Bruchhausen*, the Second Circuit refused to issue a writ of mandamus requiring new service of process on a partnership that had acquired real property from a corporation that was being sued by tenants of the real property when the plaintiffs sought to substitute the partnership as a defendant. 284 F 2d. 783 (2nd Cir. 1960). There, the court found that substitution did not prejudice the partnership because it had "continuously participated in the proceedings," and because substitution resulted in the partners being "just where they should have

been had they been more frank earlier as to the ownership of the realty." *Id.* at 786. Using the writ to require service of process, said the court, was "an essentially useless formality" at that point, and was "an act of supererogation." *Id.*

In addition, neither Defendant Harold nor Defendant SWEWAT have raised the issue of improper procedure under Rule 25(c) based on improper service of process until this Response, which raises the possibility that this defense has been waived. (*See* ECF No. 91, Joint Emergency Motion; ECF No. 97, SWEWAT's Reply in Support of Joint Emergency Motion (arguing only that SWEWAT was improperly joined on the merits).) When a case is initiated, under Rule 12(h), the defenses of insufficient process and insufficient service of process are waived if they are not included in the first response, whether a motion to dismiss under Rule 12 or a responsive pleading. Fed. R. Civ. Proc. 12(h). By analogy, when a nonparty that was not timely served is nevertheless joined under Rule 25(c), and that nonparty does not object to the procedure by which it was joined but argues only that its joinder was improper as a matter of substantive law, it follows that the defense of insufficient service of process is waived. This reading of Rule 25's incorporation of Rule 4's service requirements would also prevent Rule 4 from being more potent in the narrow context of joinder of successors in interest, who often have notice of pending litigation, than it is when initiating suits generally.

Finally, the due process concerns that underlie the procedural requirements of Rule 25 are not present here. SWEWAT contends that its "due process rights were prejudicially abrogated," because it was added "literally overnight without the benefit of either a response nor giving SWEWAT a chance to present evidence in its own defense since SWEWAT's own counsel was just hired late the night before." (ECF No. 106, Defendant SWEWAT's Corrected Response, PgID 2478.) Although SWEWAT was added as a defendant before it was served with notice of the motion to join and before it had been given a chance to provide evidence that it was not a successor in interest, it has not been prejudiced by this initial lack of process. SWEWAT was notified shortly after it was joined, it was represented at the August 1 hearing, albeit by an attorney who had only been hired the night before, and it has now had the opportunity to present its arguments and evidence regarding the merits of its joinder in three separate filings and in the October 3 hearing. (*See* ECF No. 91, Joint Emergency Motion; ECF No. 97, SWEWAT's Reply in Support of Joint Emergency Motion; ECF No. 106, Defendant SWEWAT's Corrected Response.) Therefore, SWEWAT, which arguably had notice that it was likely to become involved in litigation when it purchased the property interest with notice that there were IRS liens on the property, has had ample notice and opportunity to present its case.

suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Vacating a substantively correct order is hardly an appropriate sanction under the standard set forth in Fed. R. Civ. P. 11(c)(4). *See also Smith v. Heyns*, No. 2:12-cv-11373, 2013 WL 1163172, at *17 (E.D. Mich. 2013) ("[W]hile a failure to comply with Rule 58.1 could provide a basis for the Court to decline to enter a proposed judgment, nothing in the Rule suggests that plaintiff would be entitled to a judgment in his favor based on defendants' failure to comply with the Rule.") So, a violation of Local Rule 58.1 is not grounds for relief from an otherwise lawful order.

The Defendants claim that the United States violated Local Rule 58.1(c). (ECF No. 91, Emergency Joint Motion, PgID 1849–50.) The United States contends that it complied subsection (a) of Local Rule 58.1. (ECF No. 94, Plaintiff's Response to Emergency Motion, PgID 2013.) Local Rule 58.1 provides four alternate procedures for the entry of judgments and orders. *See* E.D. Mich. LR 58.1 ("The court may enter a judgment or order by one of the following methods.") The court is never required to choose one of the procedures to the exclusion of the others. *See Heyns*, at *17 ("[S]ubdivision (c) provides merely one alternative way in which the Court may enter a judgment or order.") The logical extension is then, unless otherwise ordered by the court or foreclosed by the language of the

subsection, the parties have discretion to choose which of the procedures outlined in Local Rule 58.1 to use in submitting a proposed order to the court. Therefore, so long as the United States complied with one of the four procedures in the Rule, the order was validly entered.

Subsection (a) of Local Rule 58.1 says, "the court may sign the judgment or order at or after the time it grants the relief in the judgment or order." E.D. Mich. LR 58.1. Subsection (c) requires a person seeking entry of an order to serve a copy of the proposed order on the other parties, wait seven days for the other parties to object, then file the proposed order and proof of service with the court. *Id.* The United States filed the proposed order with the Court at the same time that it sent a copy to the Defendants, and therefore did not follow the procedure outlined in subsection (c). (ECF No. 91, Emergency Joint Motion, PgID 1849–50.) The United States did, however, comply with subsection (a) because the Court, during the August 1, 2019 hearing, granted the relief of the appointment of a receiver, then directed counsel for the United States to re-submit the order he had previously proposed and to send a copy to the defendants' counsel to see if they had any objection to the proposed receiver.[3] (*Id.*) Counsel for the United States then

---

[3] Defendants make much of the Court's suggestions that the parties talk amongst themselves to select a receiver and that it would consider the name of a proposed receiver submitted by the Defendants. (*See* ECF No. 91, Emergency Joint

submitted an updated Proposed Order to the Court and emailed a copy of the new Proposed Order to counsel for the Defendants on August 9, 2019. This Proposed Order appointed Austin Black II as Receiver and contained detailed provisions outlining the rights and duties of the parties vis-à-vis the Receiver. (*See* ECF No. 88, Order Appointing Receiver, PgID 1831–39.) The Court signed the proposed order and entered it on August 16, 2019. This sequence of events complies with Rule 58.1(a) because the Court signed an order that contained the relief it granted during the August 1, 2019 hearing.

Defendants' second, and related, argument is that the order that Plaintiff submitted to the Court on August 9, 2017 in response to the Court's instruction to resubmit the proposed order, was "vastly different" than the one Plaintiff initially submitted with its July 3 Motion to Appoint a Receiver. (*See* ECF No. 91, Emergency Joint Motion, PgID 1850.) Factually, this claim is tenuous. The specific provisions that Defendants identify as failing to comport with the August 1 rulings are a revision in the language that requires Dr. Harold to maintain the grounds of Property and a paragraph enjoining SWEWAT from doing anything to reduce the marketability of the Property. (*See id.* at PgID 1852.) The first change, regarding Dr. Harold's responsibilities in maintaining the Property, does not

_____

Motion, PgID 1848–49.) Neither of these suggestions, however, created an affirmative obligation that Plaintiff failed to perform in submitting the order.

significantly alter her obligations under the order and therefore does not render the August 9 Proposed Order "vastly different" from the July 3 Proposed Order. The second change, enjoining SWEWAT in addition to Dr. Harold, simply reflects the fact that SWEWAT is now the owner of the vendee interest in the Property upon which the IRS is seeking to enforce its liens. This is a significant change from the July 3 Proposed Order, but at that time neither the Plaintiff nor the Court knew that SWEWAT had purchased Dr. Harold's land contract interest. (*See* ECF No. 94, Plaintiff's Response to Emergency Motion, PgID 1999.)

It is also not clear how the cited differences create a legal basis for vacating the order. Defendants argue that the differences mean that the August 9 Proposed Order was improperly submitted under Local Rule 58.1(a) because it "does not comport with the Court's August 1, 2019 rulings, and includes numerous items not addressed at all in the Court's August 1, 2019 ruling." (ECF No. 91, Emergency Joint Motion, PgID 1850 n.1.) However, subsection (a) allows a court to enter a judgment or order by signing it "at or after the time it grants the relief in the judgment or order," and it does not, as subsection (b), require any of the parties to approve the form of the order, nor does it, as subsection (c), explicitly require the Court to determine that the order "comports with its decision." E.D. Mich. LR 58.1. This suggests that, under this subsection, courts have the discretion to shape

the form of an order to best fit the relief granted. Here, the order that the Court entered on August 16, 2019 is simply a detailed description of the relief granted in the hearing—the appointment of a receiver. (*See* ECF No. 88, Order Appointing Receiver, PgID 1831–39.) Defendants have failed to provide a non-frivolous argument under Local Rule 58.1 that the Order should be vacated.

### b. Austin Black II is an Appropriate Receiver

The final basis for relief from the order alleged by the Defendants is that Austin Black II is an inappropriate receiver because, they allege, he is "not a neutral party," and has "a long-standing relationship with the Internal Revenue Service and the Department of Justice." (ECF No. 91, Emergency Joint Motion, PgID 1850–51.) Instead, they propose attorney Kenneth A. Nathan, a Chapter 7 Bankruptcy Trustee, based on his "decades of experience in liquidating property for the benefit of creditors." (*Id.* at 1852 n. 3.) This argument has no merit.

First, the Defendants have cited no provision of law that makes it illegal for the IRS to appoint a receiver who has worked with them in the past. Second, assuming that it would be inappropriate for the IRS to appoint a receiver with whom they had worked in the past, the United States has provided ample evidence to show that Mr. Black is, in fact, neutral. Mr. Black has never previously worked with the IRS or any component of the U.S. Department of Justice and has not

received any compensation to date for work on this case. (*See* ECF No. 95, Declaration of Austin Black II, PgID 2029–30.) The United States' "attempts to have Austin Black II involved in the case in several different roles" were unsuccessful, so Mr. Black was not involved in the case until he was appointed as the Receiver. (ECF No. 91, Emergency Joint Motion, PgID 1850–51; *see* ECF No. 95, Declaration of Austin Black II, PgID 2029.) The United States nominated Mr. Black because he had recently sold a house one block away from the Property and therefore had relevant experience. (ECF No. 95, Declaration of Austin Black II, PgID 2029–30.) Thus, there is no reason why Mr. Black should not have been appointed as the Receiver, and there is no basis upon which the Court should vacate its August 16, 2019 Order Appointing Receiver.

## V.    CONCLUSION

The Court GRANTS Plaintiff's Motion for Order Determining that Defendant SWEWAT, LTD has Succeeded to the Position of Defendant Harold and is Bound by All Prior Rulings in this Case (ECF No. 96) and DENIES the Defendants' Emergency Joint Motion for Relief from Order (ECF No. 91).

IT IS SO ORDERED.

Dated: 10-17-19

Paul D. Borman
United States District Judge

28

## B. Defendants' Emergency Joint Motion for Relief

Defendants, in their Emergency Joint Motion, (ECF No. 91), make four arguments that the Court should vacate the Order. First, they make the substantive arguments analyzed in the prior section. Second, they argue that Plaintiff did not comply with Local Rule 58.1(c) when it submitted a Proposed Order Appointing Receiver on August 9, 2019, which was signed and entered on August 16, 2019 because Plaintiff did not follow all the procedural formalities required by that subsection. (*Id.*, PgID 1848–50). Third, and relatedly, they argue that the August 9, 2019 Proposed Order "does not comport with the Court's August 1, 2019 rulings, and includes numerous items not addressed at all in the Court's August 1, 2019 ruling." (*Id.*, PgID 1850, n. 1.) Fourth, Defendants argue that Austin Black II is an unacceptable receiver because he is "not a neutral party." (*Id.*, PgID 1850–51.) Other than the text of Local Rule 58.1, Defendants do not cite any law in support of these arguments, which are unpersuasive for several reasons.

### a. Local Rule 58.1

Before the Court evaluates Defendants' two arguments under Local Rule 58.1, it is important to note that the appropriate sanctions for a non-compliance with the local rules are those sanctions identified in Federal Rule of Civil Procedure 11(c). E.D. Mich. LR 11.1. Those sanctions "must be limited to what

22